MORGAN, et al. *v.* STATE, ex rel.

In Banc. Jan. 23, 1950.

No. 37363 (44 So. (2d) 45)

Lucien M. Gex, and W. E. Gore, for appellants.

**Robertson & Robertson,** for appellee.

**Smith, J.**

On relation of the District Attorney, complaint was filed in the Chancery Court of Hancock County that appellants, as a part of their business, "have kept, and are now keeping, exhibiting and operating illegally and in flagrant disregard for and open defiance of the laws of the State of Mississippi to the detriment of the welfare, morals and well-being of the citizens of Hancock County, Mississippi, have on numerous occasions illegally had in their possession in said premises certain gaming or gambling devices or machines, commonly called Slot Machines, and other similar devices which are habitually operated in violation of the laws of the State of Mississippi, and particularly said Section 1073, Code 1942; and that on account of said possession, exhibition and operation of the said gambling devices on said premises by defendants, the same has become, and is, a nuisance within the express meaning of the laws of this State, and should be abated as such, as provided for by law in such cases."

Attached to the original bill of complaint, and as an exhibit thereto, is an affidavit signed by three persons, which contains this allegation: "each of them played said machines by placing nickels therein and pulling the lever to see whether or not they would win anything . . . .".

The prayer was for a temporary injunction, without notice, restraining appellants from operating or permitting the further operation of the machines, or their removal except by some person lawfully authorized by the chancery court. A temporary injunction was accordingly granted. The prayer was further that, after due hearing, the acts complained of be declared to be a common

nuisance, and abated as such; and for the granting of all such further orders and decrees necessary and permissible under the law, to effectuate the same; and for general relief.

Appellants demurred, charging among other grounds not argued here, that there was no equity on the face of the bill; the court was without jurisdiction under said Section 1073, Code 1942; slot machines not being named in said section are not within the purview or class of instrumentalities condemned by that section; complainant had an adequate remedy at law, by criminal prosecution; operation of slot machines is not a nuisance under the law; the bill insufficiently describes slot machines, so as to demonstrate that they are gambling devices; the expression ''any other kind or description of gambling device under any other name whatever,'' following the enumeration of gambling devices named in the statute, does not lawfully include slot machines, and the failure to name slot machines in the statute constitutes an exclusion of such machines from the operation of the statute and the right to an injunction; and the affidavit exhibited with the bill is no lawful part thereof.

The demurrer was accompanied by a motion to dissolve the temporary injunction. Both were overruled, and appellants having declined to plead further, the temporary injunction was made permanent. It was also decreed, that the possession and operation of slot machines in the place of business of defendants below, appellants here, constituted the operation of a gambling device as prohibited by Section 1073, Code 1942, and, was, therefore a public nuisance. Appellants were also ordered to make bond, as provided in the statute. From this decree, they appealed.

The chief complaint by appellants is that slot machines are not within the range of Section 1073, supra, since they are not specifically enumerated among the devices therein listed. The pertinent part of the statute reads:

"Any building club, vessel, boat, place or room, wherein is kept or exhibited any game or gambling table, commonly called A. B. C. or E. O. roulette, or rowley-powley, or rouquetnoir, roredo, keno, monte, or any faro-bank, dice, or other game, gaming table, or bank of the same or like kind, *or any kind or description of gambling device under any other name whatever,* and any such place where information is furnished for the purpose of making and settling bets or wagers on any horse race, prize fight, or on the outcome of any like event, or where bets or wagers are arranged for, made or settled, shall be deemed to be a common nuisance and may be abated by writ of injunction, issued out of a court of equity upon a bill filed in the name of the State by the Attorney-General, or any district or county attorney, whose duty requires him to prosecute criminal cases on behalf of the State in the county where the nuisance is maintained, or by any citizen or citizens of such county, such bill to be filed in the county in which the nuisance exists. And all rules of evidence and of practice and procedure that pertain to courts of equity generally in this State may be invoked and applied in any injunction procedure hereunder." (Italics supplied.)

The further objection to the decree of the chancery court is that the State was not entitled to an injunction, because it had an adequate remedy at law, to wit: criminal prosecution. However, if it be determined that the slot machine, described in the original bill as a gambling device, is brought within the coverage of the statute by this provision, "or any other kind or description of gambling device under any other name whatever," then the statute itself answers such argument, without the necessity of further discussion of the point.

The State contends that such clause does bring slot machines used and operated as gambling devices within the statute. Appellants insist that it does not, since the devices intended to be embraced therein are specifically

set forth by name, and slot machines not being among those named are therefore excluded, by virtue of the ejusdem generis rule.

In their brief, appellants, on the authority of Funk & Wagnall's New Standard Dictionary, 1927, define most of the gambling devices enumerated in the statute. They say they were unable to find a definition of ''A. B. C.'' They do not undertake to define ''dice.''

Perhaps it is as unnecessary to define ''dice'', since they are so commonly known, as to define what are commonly known as ''One-Armed Bandits'', or ''Slot Machines'', used for gambling. No one, perhaps, would seriously doubt that even Supreme Court Judges share the common knowledge as to what are slot machines, operated as gambling devices, even though, along with a great many other citizens, they may never have actually played them.

It is to be noted that practically all of the listed gambling appliances are played by the use of mechanical devices, and that a slot machine for gambling is a mechanical device, so that it comes within the general classification or genus of a mechanical gambling device. The statute with which we are now concerned was first enacted as Chapter 341, Laws 1938. At the same session, the Legislature adopted Chapter 353, now Section 2047, Code 1942, declaring described slot machines to be gambling devices. In Atkins v. State, 178 Miss. 804, 174 So. 52, this Court held that a slot machine, played for a jackpot, operated by placing 5-cent coins in a slot and pulling a lever for which purchaser could get a piece of gum, or sometimes 10¢ or 15¢, was a ''gambling'' device under statute which made it unlawful to operate slot machines which did not indicate in advance what purchaser was to receive. General, Local and Private Laws, 1935, Extraordinary Session, Chapter 20, Sections 204 (f), 250; Section 821, Code 1930, now Section 2047, Code 1942. This case was recently cited by this Court in King v. City of

Louisville, 42 So. (2d) 813, not yet reported in State Reports.

Nevertheless, the argument is very interestingly made by appellants that the Legislature never intended to make the possession for operation of slot machines as gambling devices a common nuisance, the essence of the contention being based on a history of a statute beginning with the Act of June 18, 1822, Chapter 60, Section 11 of Poindexter's Code, page 323. This statute, while along the same lines as Section 1073, Code 1942, is a criminal statute, but does not mention slot machines. They historically trace this particular statute through all the codes down to Section 2192, Code 1942. Just when slot machines were first possessed and used as gambling devices does not appear in the record, and this we have been unable to ascertain by independent research. As stated, the current version of the traced statute is now found in Section 2192, Code 1942, providing that "If any person shall be guilty of keeping or exhibiting any game or gaming table commonly called A. B. C. or E. O. roulette or rowley-powley, or rouquetnoir, roredo, keno, monte, or any farobank, or other game, gaming table, or bank of the same or like kind or any other kind or description under any other name whatever, . . .", such person shall be subject to fine or imprisonment or both. This statute, therefore, makes it a criminal offense to possess many of the devices listed in Section 1073, while the latter makes such offense also a common nuisance, and subject to suppression by injunction.

From this statutory history, we gather that appellant seeks to establish two points. First, that since the statute just reviewed is a criminal statute, and provides punishment as for crime, as also does Section 2047, Code 1942, the State was not entitled to an injunction, because there was an adequate remedy at law; second, that the Legislature intended to legalize slot machines, or at least, never intended to bring them within the provisions of Section 1073, Code 1942.

As already stated, if appellants are wrong in the second point of view, and the Legislature did intend to embrace slot machines, in Section 1073, then it follows that they are wrong in their first contention, for the reason Section 1073 expressly provides the remedy by injunction. The Legislative intent is what we must seek and determine.

Since the statute does not expressly include slot machines by name, it must be conceded that if they are brought within the purview of the statute at all, it is to be by the quoted clause: ''or any other kind or description of gambling device under any other name whatever.'' Except for the similarity of their use and mechanical character there is nothing like a slot machine listed in the statute, so that such device, according to the charge in the original bill, is within the genus or general classification as a gambling device, but is not among the several species thereof enumerated, and, indeed, it must be observed there is quite a variety in the species of devices listed.

It becomes, therefore, necessary to determine whether the clause in controversy is within the rule of ejusdem generis. The general rule is thus given in 28 C.J.S., page 1049: ''Ejusdem generis. Literally 'Of the same kind or species.' A well-known maxim of construction, sometimes called Lord Tenterden's Rule, to aid in ascertaining the meaning of a statute or other written instrument, the doctrine being that, where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind, as in the case of a 'clean-up' phrase, such as the term 'otherwise' with respect to a classification which immediately precedes it. It has been said that the rule has been universally applied with some degree of strictness, so as not to enlarge the provisions of a statute, unless it was manifest from a reading of the whole statute, or relative statutes, that it

was intended to broaden powers delegated, but that it is only a rule of construction to aid in arriving at the true intention of a statute or contract, and never overrules an intention that is clear. The phrase has been compared with, and distinguished from, the maxim '*noscitur a sociis*' ''. (Italics ours.)

In Mississippi, the only related statutes are Sections 2047, Code 1942, originating as Chapter 353, Laws 1938, at the same session of the Legislature which passed Chapter 341, Laws 1938, now Section 1073, Code 1942, the statute we are called upon to construe in the case at bar; and Section 2192, Code 1942.

It is a well known rule of statutory construction that every word, sentence, phrase, or clause in a statute must be given a meaning, if possible, and this rule is not avoided by the use of the aid to statutory construction, ''ejusdem generis.'' For instance, it has been held that the words ''action or suit,'' as used in Code 1930, Section 2290, prohibiting maintenance of action or suit or other proceedings to enforce trust deed after remedy at law to enforce debt has been barred, cover every proceeding of a judicial character by which trust deed may be enforced, and words ''other proceedings'' would be meaningless if restricted to proceedings of a judicial character. Gates v. Chandler, 174 Miss. 815, 165 So. 442.

Too, this Court has said that the State Tax Collector, with statutory authority to sue for unpaid taxes and all past due obligations, could not sue for wrongful removal of sand and gravel from bed of navigable body of water, since the principle of ejusdem generis applies, and words ''past due obligations'', are given meaning by what goes before. Gully, Tax Collector v. Stewart et al., 178 Miss. 758, 174 So. 559.

Attention has already been called to the fact that under the averments of the original bill the slot machines involved here were of the same genus, or general classification or character, as gambling devices named in the

statute, but of a different species from the particular devices listed. This Court, in State v. Russell, et al., 185 Miss. 13, 187 So. 540, declared the law to be that the rule of statutory construction known as "ejusdem generis" is simply an aid invoked by courts in determining the intent with which words are used, and should not be applied when so to do would defeat purpose sought to be accomplished by the use of the words. The rule of "ejusdem generis" must be applied to statute, providing that if any person with intent to defraud the State enters into a conspiracy to defeat the payment of any just claim or penalty due the State, or to defraud the State in any manner or for any purpose, he shall be guilty of a felony, as indicating that by the general language the Legislature only intended to include therein such things as were of the same general nature as the thing specifically set forth.

The rule has been expressly held to make the general words apply to the persons or things contained within the general genus of the particular persons or things enumerated, and such general words are not limited to any particular one thereof. State ex rel. Shaw v. Frazier, Governor, 39 N.D. 430, 167 N.W. 510, 514. In that case, the Court said: "Does the word 'mayor,' which is used in the statute, include such an officer? (President of a City Commission). Do the words 'or other police officers' also include him? We are satisfied that the term 'or other police officers' does cover such an official." In the case at bar, there are enumerated various mechanical gambling devices, followed by the controverted clause: "or any other kind or description of gambling device under any other name whatever." The original bill describes the slot machine involved as a gambling device, possessed and operated for that use and purpose.

The rule of "ejusdem generis" does not apply where its application would render meaningless the general words following the enumeration of particular classes as where classes enumerated exhaust the category to

which they belong or context shows that general words were not intended to be limited by preceding enumeration. State of Texas et al. v. United States et al., D. C. Mo., 6 F. Supp. 63, 65. If it be contended that the list of special gambling devices listed in the statute exhausts all of the category of gambling devices, which would be an improbable conjecture, even then, in our opinion the context manifests that the general words thereof were not intended to be restricted to the preceding enumeration, according to the very meaning of the language employed, "or any other kind or description of gambling device under any other name whatever." In the cited case, it was held that a statute providing that, upon approval of lease of railroad property by Interstate Commerce Commission, carriers affected should be relieved from operation of "anti-trust laws . . . and of all other restraints and prohibitions", did not under rule of "ejusdem generis" limit "relief to relief from restraints of anti-trust character."

Indeed, the rule of "ejusdem generis" in statutory construction is not one of universal application, and the purpose of its use is to carry out, not to defeat, the legislative intent. It is to be applied, therefore, in order to ascertain the meaning the Legislature had in mind when enacting the statute. It does not control where it clearly appears from the statute as a whole that no such limitation was intended, nor does it apply where the specific words of a statute signify subjects greatly different from another, or where the specific words embrace all objects of their class, so that the general words must bear a different meaning or be meaningless. State v. Eckhardt, 232 Mo. 49, 133 S.W. 321, 322. In this case, the Missouri Court had before it a statute which made it unlawful "for any father or mother or any other person to whom a child under the age of six years has been confided to 'expose such child in a street, field, or other place with intent wholly to abandon it' ", and decided that the rule of

"ejusdem generis" did not apply, and "other places" would not be limited to streets or fields.

A statutory provision that if any carrier or other bailee shall embezzle or convert to his own use any money, or property, which shall have been delivered to him or shall have come to his possession or under his care as bailee, he shall, on conviction, be adjudged guilty of larceny, was not confined to carriers. State of Missouri v. Broderick, 7 Mo. App. 19, 20.

An interesting case, bearing analogy to the one at bar, is Hurt, Criminal Dist. Atty. v. Oak Downs, Inc., et al., Tex. Civ. App., 85 S. W. (2d) 294, 296, 298. There it was declared that, under "ejusdem generis" rule, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of same general nature or class as those enumerated, especially in case of penal statutes. Under rule of "esjusdem generis", the particular words are presumed to describe certain species, and the general words to be used for the particular purpose of including other species of the same genus, for the reason that, if the Legislature had intended the general words to be used in their unrestricted sense, it would have made no mention of the particular classes. The words "other" or "any other" following an enumeration of particular classes are therefore to be read "as other such like", and to include only others of like kind or character. The doctrine of "ejusdem generis", however, is only a rule of construction, to be applied as an aid in ascertaining the legistative intent, and cannot control where the plain purpose and intent of the Legislature would thereby be hindered or defeated; nor does the doctrine apply where the specific words of a statute signify subjects greatly different from one another; nor where specific words embrace all objects of their class, so that the general must bear a different meaning from the specific words or be meaningless; nor where there are

no specific terms followed by general terms. The general expression is not to be considered as limited only to the last of the enumeration, but applies to all. In that case, the Texas court definitely held that the rule of "ejusdem generis" was inapplicable to statute denouncing betting at any gambling table or bank, or at muggins, crackloo, crack-or-loo, matching coins, or "upon anything in any place where people resort for the purpose of betting", so as to prohibit betting only on things specifically mentioned, in view of great difference in specific things or games, upon which betting was prohibited. Certainly, in the case before us, there is a great difference and variety in the specifically listed gambling devices enumerated in the Mississippi Statute.

See also City of Lexington v. Edgerton, 289 Ky. 815, 159 S. W. (2d) 1015, 1017, 1018, 151 A.L.R. 1207; Couch v. State, 71 Okl. Cr. 223, 110 P. (2d) 613, 615; United States v. Gilliland, 312 U. S. 86, 61 S. Ct. 518, 522, 85 L. Ed. 598; Lamere et al. v. City of Chicago, 391 Ill. 552, 63 N. E. (2d) 863, 866.

But, appellants say this Court has expressly construed this statute in the case of State ex rel. Whall v. Saenger Theatres Corporation et al., 190 Miss. 391, 200 So. 442, contrary to the contention of appellee here and the decree of the court below. That case involved what was known as "Bank Night", which involved the giving of prizes or awards to patrons of a theatre present when his or her name was drawn from a basket. It was held not to be within the purview of Section 1073, Code 1942, Laws 1938, Chapter 341, for the reason that where nature of games enumerated in statute authorizing an action to abate gambling games and devices appeared generally to be either those played with cards or dice or by the use of physical equipment designed and constructed and especially adapted to the playing of the named games and kept on hand for that purpose, a "bank night" scheme did not come within the clause "or any other kind of gambling

device under any other name whatever," and action could not be maintained to abate bank night scheme of theatre as a "public nuisance". This case cites also Section 962, Code 1930, now Section 2192, Code 1942. It is to be noted that we branded "bank night" as a scheme, while the statute applies to things "kept or exhibited". Mechanical gambling devices, can be "kept and exhibited",—a scheme is not capable of being possessed, kept or exhibited in the statutory sense. We do not think the Saenger case is in point here, or inconsistent with our view that the statute does reach out to include slot machines kept and used for gambling purposes, by virtue of the clause, "or any other kind or description of gambling device under any other name whatever."

The "ejusdem generis" rule cannot avail here to exclude such gambling devices, in our opinion, from the operation of the statute, in view of all we have said supra.

It must always be remembered that the slot machine we are considering is charged to be a gambling device. 39 Words and Phrases, Perm. Ed., p. 387, contains this: " 'Slot machines' are mechanical gamblers, and, being impassive and having no sensations of any sort, they are more likely to win than gambling games which are run by gamblers, who have all of the human passions and feelings. Playing against a slot machine is a struggle between a man and a machine—a man with nerves and emotions; a machine with no nerves and no emotions." Territory v. Jones, 14 N. M. 579, 99 P. 338, 340, 20 L.R.A., N.S., 239, 20 Ann. Cas. 128.

We are further of the opinion that the case of Rouse, Sheriff v. Sisson, 190 Miss. 276, 199 So. 777, 132 A.L.R. 998, is clearly distinguishable from the instant case, and, hence presents no bar to our conclusion that the decree of the chancery court was correct and should be affirmed. In the Rouse case, we held that to condemn a device as "gambling" there must be involved as a substantial feature in its operation the element of uncontrolled and un-

controllable chance. We take it that no customer of a "One-armed bandit" has ever been able to control or has ever controlled his chances with such a gambling device.

We do not deem it necessary to discuss the other incidental matters suggested in challenge to █ the chancellor's decree, which must be, and is, affirmed.

Affirmed.