## LUSE et al. v. CITY OF DALLAS.
### No. 12746.

Court of Civil Appeals of Texas. Dallas.

July 22, 1939.

Rehearing Denied Oct. 7, 1939.

Eustis Myres, Angelo Piranio, and O. F. Wencker, all of Dallas, for plaintiffs in error.

H. P. Kucera, City Atty., and A. J. Thuss and Chas. E. Long, Jr., Asst. City Attys., all of Dallas, for defendant in error.

YOUNG, Justice.

The petition of plaintiffs in error in the trial court was for mandamus against the municipality of Dallas, its governing authorities and administratives, to compel the issuance of a permit for the erection of a

retail store building on property located at Vickery Boulevard and Greenville Avenue. The relief prayed for was denied upon hearing and this appeal resulted, the trial court filing findings of fact and conclusions of law. A fuller statement of the case and the contentions of plaintiffs are taken from the briefs. W. P. Luse and Mrs. A. F. McDonald, petitioners, were owners of lots 13 and 14 of Vickery Place, an addition to the City of Dallas, lying on the northwest corner of above streets. These lots had been zoned as a Dwelling District, B. Area, under the Zoning Ordinance No. 2052, as amended; and plaintiffs first applied to the City for a change in said ordinance, so as to include their land under Class C, or Commercial Area—a classification theretofore given to property across the street (Greenville) to the east, and to property across an alley in the same block northwardly on said Greenville Avenue. The application was referred to the City Plan Commission, which reported favorably upon the change, but the City Council, after a hearing, rejected the report of the Plan Commission and refused said request. Thereafter, plaintiffs applied to the City building inspector for a permit to erect a retail business building on the lots, which was denied. Appeal was taken to the Board of Adjustment, as provided in the Zoning Ordinance, and the action of the building inspector was upheld. This suit was then filed within ten days, alleging the above matters and charging that the action of the City officials, with the exception of the Plan Commission, was discriminatory and unreasonable; alleging that their property, by reason of the business buildings around it, had lost its value as residence property, with consequent failure of reasonable revenue; that same was located on one of the main highways of the City (Greenville Avenue) on which large business sections were located; that the erection of the business building for which permit was sought, would not increase the fire, police, traffic, or other hazards in the vicinity; and such building, instead of decreasing the value of the surrounding property, would enhance the same. Plaintiffs further contended that defendant City had failed to create a Board of Appeals, or Review, as provided for in Chap. 87, Acts 1921 Leg. (Art. 1175, subd. 26, R.S.1925) and Dallas City Charter (1930), Chap. 24, Sec. 229, thus depriving them of "due process" granted by both State and Federal Constitutions (Vernon's Ann.St.Const. art.

1, § 19; U.S.C.A.Const. Amend. 14). Defendant City plead the Zoning Ordinance, contending that the property in question was properly zoned and that plaintiffs had been afforded all rights and hearings provided by law; also, that plaintiffs, by their own action, had fixed the Board of Adjustment, created under municipal law and Art. 1011g, Vernon's Ann.Civ.St., as the administrative agency for determination of their appeal, their petition to said Board reading: "Therefore, the appellant now appeals, in accordance with the provisions of the Zoning Ordinance, to the Honorable Board of Adjustment to grant the heretofore requested permit and to permit him to occupy, or rent the completed premises as a retail store building." Plaintiffs later filed their petition for certiorari in the district court, within the time provided by Acts 1927, 40th Leg., c. 283, § 7 (Art. 1011g).

Plaintiffs urge in propositions one to four, that the Zoning Ordinance is invalid and a valuable right has been lost to them because no Board of Appeals or Review has been created under Sec. 229, Dallas City Charter; and, in propositions five to nine, that said ordinance, while generally valid, in its special application to their property, is unreasonable and arbitrary. The provision in question (Sec. 229) appears in Chap. 24 of the City Charter under the subject "The City Plan Commission and Zoning"; is styled "Zoning Ordinance", and is obviously authorized by Acts 37th Leg., 1921, Chap. 87, p. 169, R.S.(1925) Art. 1175, Subd. 26, which reads in part:

"For the purpose of carrying out the powers herein conferred and seeking to do justice to all persons, the Governing Body is hereby authorized to create a Board of Appeals or Review, which shall be composed of at least five reputable citizens and taxpayers of the City of Dallas, and who shall, upon application of any person aggrieved by any order, requirement, decision or determination of the City Council or other governing body concerning any zoning or the exercise of the powers herein conferred upon the said governing body relative thereto, to give a full and fair hearing to any such person, and after said hearing if the Board of Appeals or Review is of the opinion that the said order or ordinance or decision of the said City Council or other governing body is inequitable and unjust it shall have the power to modify the said order or decision and in such

case it shall certify its ruling to the governing body of the City and such governing body shall thereafter change its order so as to conform to the said ruling. The Board of Appeals or Review shall fix and determine the time of hearings to be given all persons aggrieved; provided that it shall be the duty of all persons to make application to the said Board of Appeals or Review within five days of the date of the order or of any action of the City Council or other governing body unless such time be extended by the Board of Appeals or Review. That the said Board of Appeals or Review shall have full power and authority to provide such rules or order of business as it deems advisable, and it shall be its duty to hear any person aggrieved, either in person or through agent or attorney.

"The City Council or other governing body of the City is further authorized to exercise all other powers that may be necessary to effectuate and carry out the purpose and design of the powers herein conferred. Such powers shall include provisions for compensation for members of the Board of Appeals or Review, fixing their tenure of office and providing for their removal or dismissal therefrom.

"All of the powers granted by Chapter 283, page 424 of the General and Special Laws of the Fortieth Legislature of Texas, and known as House Bill No. 87, authorizing cities and incorporated villages to pass zoning regulations, are hereby adopted."

Sec. 20 of Amended Ordinance 2052, City of Dallas, Zoning Law, provides for a Board of Adjustment with powers granted and controlled by Sec. 7, Chap. 283, Laws of 1927, being present Art. 1011g, Vernon's Ann.Civ.St., under which the City authorities were empowered to set up such administrative body. It reads in material part:

"Such local legislative body may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this Act (Arts. 1011a–1011j) may provide that the said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. The board of adjustment shall consist of five members, each to be appointed for a term of two

years and removable for cause by the appointing authority upon written charges and after public hearing. Vacancies shall be filled for the unexpired term of any member whose term becomes vacant. * * * Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. * * *

"Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within 10 days after the filing of the decision in the office of the board."

The Zoning Ordinance referred to was passed by the legislative body of the City of Dallas in 1929, and a Zoning or City Plan Commission and Board of Adjustment appointed, which administrative agencies have functioned since their creation, discharging all the duties placed upon them by law. Said ordinance, comprehensive in form, has been held constitutional. Scott et al. v. Champion Bldg. Co., Tex.Civ.App., 28 S.W.2d 178; Lombardo v. City of Dallas, Tex.Civ.App., 47 S.W.2d 495; Id., 124 Tex. 1, 73 S.W.2d 475. The cases just cited set out the terms of the law and ordinance in sufficient detail, and simple reference thereto is made. The Dallas Home Rule Charter, as amended, of which Sec. 229, first above quoted, is a part, has been effective since 1931. We must keep in mind that our present state zoning laws, described as Acts 40th Leg., Chap. 283, House Bill 87, being Arts. 1011a–1011j, Vernon's Ann.Civ.St., were also adopted and made a part of said Charter; and that under the organic law of the City, both a Board of Appeals or Review, and a Board of Adjustment, are authorized. The findings and conclusions of the trial court in this connection are:

"That the plaintiffs were duly notified of each of the hearings before the City Council of the City of Dallas, the Board of Adjustment of the City of Dallas, and the City Plan Commission of the City of Dallas, and that at each of said hearings the plaintiffs appeared in person or by and through their attorney and were given an

opportunity to be heard and were heard upon their application to change the Zoning Ordinance of the City of Dallas or to be granted an exception to the terms thereof, and that plaintiffs were accorded a full, fair and impartial hearing upon each occasion."

* * *

"I further find that the City Council of the City of Dallas has not appointed a Board of Appeals and Review as provided in Section 229 of the Charter of the City of Dallas since the Acts of 1927, Chapter 283, became effective and all appeals from the refusal to grant a building permit, as in this case, has been handled by the Board of Adjustment."

* * *

"I further conclude as a matter of law that Section 229 of the Charter of the City of Dallas wherein it provides for a Board of Appeals and Review is in conflict with the State statute regulating zoning matters, viz. Article 1011g, and said Charter provision is unconstitutional and void."

It is the substance of plaintiffs' first contention that Sec. 26, Art. 1175, and the charter provision authorizing a Board of Appeals or Review, are not superseded by Art. 1011g, providing for the presently established and functioning Board of Adjustment, to which body plaintiffs have already appealed, in strict compliance with the Zoning Ordinance; and, notwithstanding the regular and lawful procedure heretofore taken by plaintiffs, that, by failure of defendant to create a Board of Appeals and Review, plaintiffs have still been deprived of certain rights guaranteed by the terms of the same charter under which defendant City has been clothed with the zoning power.

■■■ The two Boards referred to, both authorized by the City Charter, one of which has been established (the Board of Adjustment) and the other has not, are apparently designed to cover a substantially similar field of civic administration. Though appointed by the governing body, or Council, the latter retains no further supervision over either Board. The so-called "Board of Appeals or Review" purports to be the sole supervisory agency for review of orders or decisions of the governing body (the Council) in zoning matters, whereas, under Ordinance 2052, heretofore declared constitutional, the appeal is from the decision of the building inspector (the administrative officer) to the Board of Adjustment and thence to the courts. Considering Sec. 229 of defendant's charter, under the facts of this record and the terms of said Zoning Ordinance, we can find no exigency whereby a Board of Appeals or Review could be called upon to function, if and when created; as it cannot be contended that the Board contemplated by the charter could legally reverse the action of the Council in refusing to amend the ordinance, thus classifying plaintiffs' property as local retail, for such would be the exercise of legislative authority, a power inherent only in the governing body and nondelegable. Lombardo v. City of Dallas, Tex.Civ.App., supra. We hold, therefore, that defendant cannot be required to create the Board as described in the aforesaid Section 229, City Charter, when a similar and efficient agency—the Board of Adjustment —has already been provided under the terms of the same instrument and the general law, with additional recourse to the courts by certiorari. We think due process has been accorded plaintiffs in the full hearings to which they have had legal access. "No one has a vested right in any given mode of procedure, and so long as a substantial and efficient remedy remains or is provided, due process of law is not denied by the legislative change." 12 Am. Jur., Constitutional Law, Vol. 12, Sec. 582; National Labor Relations Board v. Mackay, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

With further reference to Sec. 229 of our Home Rule Charter, it is difficult to understand why it was ever inserted therein, considering the history of this ill-fated bit of legislation. As already stated, it is based on Subd. 26, Art. 1175, which subdivision became law in 1921; Acts 37th Leg., Ch. 87, p. 169. Its enactment was in connection with earlier efforts of our State Legislature to authorize zoning and building restrictions in Home Rule cities of Texas, and was a part of old Ordinance 742, which was condemned by the courts on successive occasions as invalid. City of Dallas v. Mitchell, Tex.Civ.App., 245 S.W. 944; City of Dallas v. Burns, Tex.Civ. App., 250 S.W. 717; Marshall v. City of Dallas, Tex.Civ.App., 253 S.W. 887; City of Dallas v. Urbish et al., Tex.Civ.App., 252 S.W. 258; City of Dallas v. McElroy, Tex.Civ.App., 254 S.W. 599. In the Urbish case, Judge Dexter Hamilton, speaking for this court, said [252 S.W. 260]: "The ordinance virtually leaves to the caprice and whim of the board of appeals or review, or

1084

to the desires of those who own nearby property, whether or not property in any given locality may be used for the purpose which the city in this instance has denied. * * * An ordinance which renders the property of citizens subject to any control by the arbitrary will of the board of appeals, or the mere caprice of owners of property adjoining a given location, is not an ordinance prohibiting the establishment and operation of picture shows in the residence part of the city under circumstances affecting the public health, safety, etc."

It will be noted that under Sec. 229, City Charter, there is a delegation of power to the Board of Appeals or Review uncontrolled by any standard or rules prescribed by legislative enactment, or the governing body, such as are clearly expressed and detailed in Art. 1011g, Vernon's Ann.Civ. St., and Amended Ordinance 2052, relative to the Board of Adjustment.

■ It was not until 1927 that the present City zoning law was passed (Acts 40th Leg., Ch. 283, p. 424, Arts. 1011a–1011g). This legislation and the Dallas Zoning Ordinance of 1929 authorized thereby, constituted a valid exercise of the police power in the interest of the public. The emergency clause' of the 1927 Act recites: "The fact that in this State there are no zoning laws, and the fact that the health, safety, morals, and general welfare of certain communities are endangered creates an imperative public necessity * * *," etc. Section 11. Bearing in mind the treatment accorded the 1921 law, in the matter of municipal zoning and building regulations, as demonstrated by the above appellate decisions, it is obvious that the 1927 law essayed to completely cover the particular subject, there *existing in this state no zoning laws,* with the result of impliedly repealing the former and fruitless attempt of 1921. "Where it is apparent that a Statute is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject. Under this rule, a statute that covers the subject matter of a former law and is evidently intended as a substitute for it, although containing no express words to that effect, operates as a repeal of the former law to the extent that its provisions are revised and its field freshly covered. Accordingly, parts of the original act that are omitted from the new legislation are to be considered as annulled. If the later act is clear-

ly intended to prescribe the only rules which should govern, it repeals the prior statute, although the two are not repugnant in their provisions." 39 Tex.Jur. Statutes, Sec. 80, pp. 148, 149.

■ The provisions of Sec. 26, Art. 1175, R.S. (Acts 37th Leg., Ch. 87, p. 169), having been completely supplanted by Acts 40th Leg., Ch. 283, p. 424 (Art. 1011a–1011g), it follows that Sec. 229 of defendant's charter, relative to a Board of Appeals or Review in zoning matters, has no basis of legislative authority; and though appearing in the same Home Rule Charter that adopted the 1927 law providing for a similar administrative body of like powers, it is inconsistent with the later law, and is hence inoperative. Huff v. City of Wichita Falls, 121 Tex. 281, 48 S.W.2d 580; Art. 1165, R.S.

■ Adverting to plaintiffs' further propositions and testimony bearing thereon, we cannot say that the Ordinance in question, in its application to their residence property, is either arbitrary or unreasonable. Substantial buildings in good repair now occupy these lots, well-adapted for residential purposes. They face Vickery Boulevard, a residential street, on both sides of which, to the west, is found an unbroken line of residences. The continued enforcement of the ordinance only restricts the use of these improvements to the purposes for which they were intended. The change insisted on by the plaintiffs would obviously result in pecuniary advantage to these particular lot owners, but this is not the test. "It is not an effective argument against a zoning ordinance, otherwise valid, that it limits the use and depreciates the value of property, as the public health, safety, morals, and the general welfare are superior in importance to the pecuniary profits of the individual owner. The particular provision of the ordinance attacked must itself be clearly arbitrary, unreasonable and without any substantial relation to the public health, safety, morals, or general welfare, before it could be held unconstitutional and void. This doctrine seems to be thoroughly well established." Lombardo v. City of Dallas, Tex.Civ.App., supra [47 S.W.2d 499]. See 86 A.L.R., Annotations, p. 671.

■ We conclude that the record before us fairly supports the following finding of the trial court: "That there was substantial evidence before the Board of

Adjustment at its hearing of the matter on November 30, 1937, tending to show that if plaintiffs' property was converted into business property and plaintiffs allowed to construct the store building and place tenants therein that traffic congestion would increase and that a traffic hazard would be incurred and that the surrounding residential property would suffer a depreciation in market value and that noises usually incident to the maintenance of a business would greatly disturb the surrounding residential occupants both day and night and that the peace and quiet of the neighborhood would be generally disturbed;" * * * and the further conclusion of law "that the action taken by the City Council of the City of Dallas in refusing to amend the Zoning Ordinance so as to constitute plaintiffs' property business property was reasonable and did not discriminate against the plaintiffs, and that the City Council did not abuse its discretion in refusing to so amend the said ordinance."

Accordingly, the assignments and propositions of appellants are overruled and the judgment of the trial court is, in all respects, affirmed.