**BOEHME BAKERY et al. v. CITY OF SAN ANGELO.**

No. 9487.

Court of Civil Appeals of Texas. Austin.
Jan. 24, 1945.

Rehearing Denied Feb. 14, 1945.

Kerr & Gayer, of San Angelo, for appellants.

Olin Blanks, of San Angelo, for appellee.

BAUGH, Justice.

Mary L. Boehme, Margaret Drake and Elsie DeLaney, operating under the trade name of Boehme Bakery, filed this suit for

writ of certiorari under the provisions of article 1011g, Vernon's Ann.Civ.St., to review the decision of the Board of Adjustment of the City of San Angelo, denying to them, under the zoning ordinance of that city, a permit to make certain additions or extensions to their business building located in an area zoned as residential property. Trial was to the court without a jury and judgment rendered refusing the relief sought; hence this appeal.

The following facts appear: The block in question is located only one-half block south of an area zoned as "Local Retail District." It is bounded on the north by Colorado Street (paved) and on the other three sides by paved streets. It is bisected in the center by a paved 20-foot alley running north and south. The east half of said block is occupied by residences all facing east. The west half of said block is occupied as follows: On the northeast one-fourth of this half block, facing on Colorado Street, and extending along the alley to the center of such half block, is a modern and up-to-date bakery. South of it, and facing south, is a residence, owned by Mrs. Boehme. On the northwest portion of said half block, west of the bakery and facing north on Colorado Street, is a residence, also owned by Mrs. Boehme. The southwest one-fourth of said half block is vacant lots. These conditions existed at the time the zoning ordinance was enacted by the City in August, 1940. The bakery had been continuously in operation at this location since 1924, and constituted, under the terms of the zoning ordinance, a nonconforming use, therein recognized. One of the extensions or additions for which the permit was sought was for a garage 45 feet by 62 feet adjoining the bakery to the rear and opening upon the alley. This would enable the bakery to house its delivery trucks (eleven in number) on the premises instead of leaving them parked on the streets or on the adjoining vacant lots; to load them at night under shelter instead of loading them in the alley, and thus exposing their products to the weather while so loading same on the trucks; and would relieve traffic both on the street in front of the bakery and in the alley necessitated by the existing method.

The other addition or extension applied for was the erection of a boiler room and tool shed 40 feet by 20 feet adjoining the bakery property on its west side. Both such additions or extensions were on property owned by Mrs. Boehme.

Appellants' application was made to and refused by the city engineer, the officer designated by the ordinance to first act in such matters. They then appealed to the Board of Adjustment, created by the ordinance with the powers prescribed by articles 1011a to 1011j, Vernon's Ann.Civ.St., which likewise refused to authorize such construction. This suit was then filed, as provided in Art. 1011g, Vernon's Ann.Civ. St., to review the decision of the Board of Adjustment. In response to the writ of certiorari the Board of Adjustment certified that its reasons for refusing the permit applied for were:

a. Because of objections of property owners in the area;

b. Because to grant same would permit an extension of a nonconforming use in a residential area in violation of section 3 of the zoning ordinance, which "the Board had no authority to grant";

c. Because such additions were not essential to the maintenance of appellants' business; and would adversely affect the value of surrounding properties and render them less desirable for residential purposes.

The trial court heard numerous witnesses in addition to documentary evidence, and upon request filed findings of fact and conclusions of law. These findings show that two contentions were presented to the trial court by the City as controlling: (1) That the Board of Adjustment had no authority, under the zoning ordinance, to grant the permit; and (2) that if it did, the granting or refusing of same was a discretionary matter with the Board, and having exercised that discretion, the court had no authority to interfere. These same contentions are made by the City on this appeal. The trial court concluded as a matter of law that the Board did have authority to grant such permit; but that it had no authority to disturb the Board's findings in the matter.

In his original findings of fact the trial court found: "That upon a hearing in this court the evidence was overwhelmingly in favor of the granting of the permit and if the court had felt that the matter was discretionary with him he would have granted the permit except for the conclusions of law."

In supplemental findings, made at the request of the City, the trial court further found:

"3. I find as a fact that the evidence in this case does not show that the defendant Board of Adjustment of the City of San Angelo acted arbitrarily, fraudulently or capriciously in denying plaintiffs' application for a permit to erect the proposed additions to their bakery.

"4. I find as a fact that the evidence in this case does not show that the defendant, Board of Adjustment of the City of San Angelo did not have evidence before it sufficient to sustain its action in denying and refusing the permit sought by plaintiffs."

■ We think the trial court correctly held that the Board of Adjustment had the authority, in the exercise of its discretion, to grant the permit applied for; but was in error in holding that it had no authority to review the Board's exercise of such discretion. The zoning ordinance provides that such Board "shall have the powers granted by and be controlled by the provisions of" the statute (Art. 1011g, Vernon's Ann.Civ.St.). The ordinance also authorizes the Board "in its judgment" to grant special exceptions to the zoning regulations, among other things, to "permit the extension of a non-conforming use of a building upon the lot occupied by such use or building at the time of the passage of this Ordinance." The City contends, however, that the provisions of section 8, sub. (3) of the Ordinance, forbids the "extension" applied for by appellant, and having done so, the Board had no authority to alter or nullify its express provisions by granting an exception. This section of the ordinance provides: "A Non-Conforming Use shall not be extended, but the extension of a use to any portion of a building which position was arranged or designed for such nonconforming use at the time of the passage of this Ordinance shall not be deemed the extension of a non-conforming use."

■ If this provision of the ordinance were absolute and conclusive and foreclosed any right of the Board of Review to grant any exceptions thereto, then the above quoted portion of the ordinance specifically granting such power would be inoperative and meaningless. So also would be the provision of article 1011g of the statute, by which the Board is "controlled" under the express terms of the ordinance, which gives to such Board the power "To hear and decide special exceptions to the terms of the ordinance, * * *." Obviously subdivision (3) is but a general provision, and controlling generally; but where its application would work a hardship or an injustice in a particular case, the Board, both under the ordinance and the statute, was undoubtedly given authority, by exception, to grant relief in a particular case "so that the spirit of the ordinance shall be observed and substantial justice done."

■■ No question of "variance" is here involved. The business being legally conducted on the premises remained the same. Even as an "extension" within the terms of the ordinance, no material change either in the character or volume of the business as such was contemplated or intended. The extension was only of the facilities for conducting the same business; and designed not only for the convenience, economy, and efficiency of its operation; but also as a benefit to the public by taking its trucks off a public street and alley theretofore used by appellants in the operation of their business. No question of the legality of the ordinance is involved; nor that the area involved was not appropriately classified thereunder. Consequently most of the cases cited by both appellants and appellee, involving such issues, are not here applicable. It may be conceded that such Board has no power, under the guise of an exception, to reclassify property; nor to authorize initially a use thereof contrary to the terms of a zoning ordinance. Such action would not be an "exception" within the meaning of the statute nor of the ordinance; but could be exercised only by the legislative body of the city to which is granted that exclusive power. City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229; Harrington v. Board of Adjustment of Alamo Heights, Tex.Civ.App., 124 S.W. 2d 401. But no such case is here presented. The sole issue here presented is, therefore, whether the Board of Adjustment has abused its discretion in this particular case; and the power of the district court to determine that question and grant appropriate relief. These questions are clearly settled by the statute itself (Art. 1011g), which gives the court the power "to review such decision of the board of adjustment" as therein prescribed; and further that

"The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

Of course the court has no power to itself exercise for the Board a discretion vested in the Board. But after the Board has exercised its discretion, and the parties affected thereby have appealed to the court as the statute authorizes them to do, then, not only as a matter of law, but by the express language of the statute itself, the court can determine not only whether the Board has "acted arbitrarily, fraudulently or capriciously", but whether it has abused its discretion in the premises. City of Harlingen v. Feener, Tex.Civ.App., 153 S.W.2d 671. The provisions of article 1011g relating to the action of such board "with gross negligence, or in bad faith, or with malice" are not limitations on the power of the court to reverse, affirm or modify their decision; but limit the right of the court only to tax the costs of such appeals against the Board in such cases.

■ Nor does the supplemental findings of fact of the trial court that the evidence upon the trial did not show that the "Board of Adjustment of the City of San Angelo did not have evidence before it sufficient to sustain its action" preclude the trial court from rendering a proper judgment based upon the evidence heard upon the trial. The trial court does not merely review the evidence heard by the Board. In fact, in the instant case, no sworn testimony was heard by the Board and no record of the proceedings before it was kept. The statute expressly authorizes the taking of independent testimony upon the trial, or even the appointment of a referee to take evidence and report same to the court with his findings and conclusions thereon. Though such Board is primarily administrative it has been held to act in a quasi-judicial capacity. City of Dallas v. Meserole Bros., Tex.Civ.App., 164 S.W.2d 564, writ refused. However, as reflected by the record, the proceedings before the Board were entirely informal, no witnesses were sworn, no record made of their testimony, and no attempt made to conform to rules of evidence. The situation here presented is very similar in principle to a hearing before the Railroad Commission. In reviewing its orders, the Supreme Court has laid down the rule that the validity of its orders upon such review are to be tested by the facts and conditions existing at the time the Board acted, as disclosed by the evidence heard upon the trial; and not by what was presented at the hearing before the Board. As stated by the Supreme Court in Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, 1030: "In Texas, in all trials contesting the validity of an order, rule, or regulation of an administrative agency, the trial is not for the purpose of determining whether the agency actually heard sufficient evidence to support its orders, but whether at the time such order was entered by the agency there then existed sufficient facts to justify the same. Whether the agency heard sufficient evidence is not material. In fact, the evidence heard by the agency is not per se admissible upon the trial in the district court." See also Cook Drilling Co. v. Gulf Oil Corp., 139 Tex. 80, 161 S.W.2d 1035. Such rule is we think applicable to the instant case; and applies whether the review be for the purpose of determining if the Board had exceeded its authority, had acted illegally, or had abused its discretion in its decision.

■ The trial court should therefore determine the issues presented to it from the evidence adduced upon the trial; and not from that reputedly brought to the attention of the Board in the hearing before it. While the trial court did not expressly find that the Board of Adjustment had abused its discretion, it did find that the overwhelming evidence showed that appellants were entitled to such permit, which finding is not complained of; and that the court would have granted it but for his erroneous conclusion of law that he had no authority to do so. This is, we think, tantamount to a finding that the Board had abused its discretion in refusing appellants the permit. It follows, therefore, that the trial court erred in refusing to grant appellants appropriate relief.

The judgment is therefore reversed and the cause remanded with instructions to the trial court to grant to the appellants appropriate relief.

Reversed and remanded with instructions.