## BOARD OF ADJUSTMENT OF CITY OF SAN ANTONIO et al. v. LEVINSON.

### No. 12304.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 7, 1951.

Rehearing Denied Dec. 5, 1951.

Kampmann & Burney, Jack R. Davis, and C. J. Matthews, San Antonio, for appellants.

Adrian A. Spears, San Antonio, for appellee.

POPE, Justice.

The Board of Adjustment of the City of San Antonio, Carmen Eggleton and her husband have appealed from a judgment of the District Court of Bexar County, that held an order of the San Antonio Board of Adjustment to be in excess of its delegated powers and void. The Board's order granted Carmen Eggleton and her husband permission to operate a beauty shop in a D-Apartment District as zoned by the City of San Antonio.

Appellants Carmen Eggleton and her husband live in San Antonio in a D-Apartment District as defined by the Zoning Ordinance, and are adjoining neighbors of appellee, Minnie Levinson. The Eggleton property is located about two hundred feet from North St. Mary's Street, where vari-

ous kinds of retail stores are situated. Mrs. Eggleton maintains her aged and blind father in her home, and Mrs. Levinson maintains her disabled sister in her home. On March 16, 1949, after proper notice and hearing, the Board of Adjustment granted Mrs. Eggleton permission to operate a one-chair beauty shop in her seven-room residence, provided she displayed no signs or advertising on the outside of the home. Mrs. Eggleton commenced the operation of her beauty shop and has continued that operation up to the present time. On September 27, 1950, Minnie Levinson sought and obtained a rehearing and challenged the Board's jurisdiction to make its former order. This application for rehearing was made more than a year and a half after the original decision by the Board. The ordinance required appeals from Board orders to be perfected within ten days. On October 12, 1950, the Board denied the rehearing and appellee within ten days filed suit in the District Court, still attacking the jurisdiction of the Board to enter its order and praying for an injunction against the operation of the beauty shop. The court after trial entered its judgment that the Board did not have the authority and jurisdiction to enter its original order in 1949, and enjoined appellants from further operating the beauty shop. The judgment was superseded.

Appellee concedes that she did not appeal from the Board's original order within the time provided by the ordinance, and that unless the order is void, she cannot attack the order.

Land uses not granted by the ordinance were expressly prohibited. The uses for a D-Apartment District as stated in the ordinance are: "Uses customarily incident to any of the above uses when situated in the same dwelling, including home occupation such as the office of a physician, surgeon, dentist, musician, or artist * * *." Another section permits also in such a district: "Uses customarily incident to any of the above uses * * * when not involving the conduct of a business other than incidental to the residential use of such lot * * *." Beyond those uses permitted

by the ordinance, the Board of Adjustment was authorized:

"To hear and decide special exceptions to the terms of this ordinance upon which the Board is required to pass herein.

"To authorize upon appeals in specific cases such variance from the terms of this ordinance as will not be contrary to the public interest where, owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardships, and so that the spirit of the ordinance shall be observed and substantial justice done."

The judgment of the district court amounts to a judgment (1) that the beauty shop as an incident to the residence is not permitted in a D-Apartment District under the wording of the ordinance, and (2) that the granting of the right to maintain the beauty shop was not a mere "variance," but was a re-zoning which is a form of legislation and in excess of the Board's delegated powers and void.

■ If the ordinance in permitting "home occupation, such as the office of a physician, surgeon, dentist, musician, or artist," means that a beautician may operate her shop in her home, any action by the Board of Adjustment becomes immaterial, for the right exists without benefit of an exception to or variance from the ordinance. The trial court has held that the beauty shop is not "such as" the vocations named in the ordinance. Erwin v. Steele, Tex.Civ.App., 228 S.W.2d 882, discusses the rule of ejusdem generis as an aid in interpreting the words "such as" when used in a will. Examination of that case shows that the general words were repeated both before and after the specific items designated in the sentence being construed, and in that respect differs from the instant case. However, we think, in the light of the ejusdem generis rule of construction, the words "such as the office of a physician, surgeon, dentist, musician, or artist" limit and contract the broader term "home occupation." Erwin v. Steele, Tex.Civ.App., 228 S.W.2d 882. The named occupations may be treated as examples or illustrations, but even so, the words "such as" require

that the home occupations be like or similar to the classifications or kinds named. Charles Behlen Sons' Co. v. Ricketts, 30 Ohio App. 167, 164 N.E. 436. The words "such as" were defined in the Erwin case [Tex.Civ.App., 228 S.W.2d 885] as: "[A] similitude, classifying articles of the kinds named, which are like or similar to those used in the will. 'Such' is defined by Webster as 'having the particular quality or character specified; certain; representing the object as already particularized in terms which are not mentioned'; as of like kind, similar, equivalent to, 'of that kind.' Travers v. Wallace, 93 Md. 507, 49 A. 415. The synonyms of 'such as,' are alike, similar, of the like kind; 'such' representing the object as already particularized in terms which are not mentioned, being a descriptive and relative word, referring to the specific articles mentioned. Strawberry Hill Land Corporation v. Starbuck, 124 Va. 71, 97 S.E. 362."

In Piaget-Del Corporation v. Kulik, 133 N.J.L. 485, 45 A.2d 125, 126, the court was called upon to construe a zoning ordinance which prohibited within business districts certain "trades, industries or uses," among others, "Merry-Go-Rounds, Ferris Wheels or similar amusement." It was there held that a skating rink was not included in the ban and that the words "or similar amusement" could not be construed to include them. The ordinance in the instant case permits uses "including home occupations such as the office of a physician, surgeon, dentist, musician, or artist." "Such as", from the definition in the Erwin case, means "similar", and the ordinance thus permits a use of a home for "the office of a physician, surgeon, dentist, musician, or artist", and/or similar home occupations, to paraphrase the Kulik case. The Kulik case reasons that if all amusements, though not stated, were included within the ban of that ordinance, the ordinance would not receive its ordinary and natural meaning, for "Evidently, there was no intention, by this provision, to reach all amusement devices and places of entertainment." By the same reasoning, unless we are to say that the San Antonio ordinance permits all home occupations, we must construe the ordinance as permitting only those named uses and similar uses, a beauty parlor not being one of them.

Hence, it becomes apparent that in the instant case, while other "home occupations" may be similar to the named vocations and permitted; many others are prohibited, both professional and unprofessional.

The purposes for passing the comprehensive zoning regulations and the establishment of the districts were those usually stated in the exercise of a city's police powers. But the ordinance not only established land uses, it also had as one of its purposes, the preservation of what it established. The ordinance permits relief from the rigors of the ordinance, but the methods of obtaining changes are stated in the ordinance. Those changes are effected by way of an (1) exception or variance at the hands of the Board of Adjustment under stated circumstances, or (2) amendment at the hands of the City Commission. Whether the ordinance as written permits the beauty shop in a D-Apartment District must be decided in view of a purpose to preserve the designated uses of the property. Every expansion of the permitted uses is an encroachment upon what is prohibited and to that degree does not preserve the district.

The Board of Adjustment was delegated the power to grant a variance so long as it "will not be contrary to the public interest where, owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardships, and so that the spirit of this ordinance shall be observed and substantial justice done." In the exercise of that power to enlarge upon permitted land uses, the Board possesses some discretion, which unless abused will prevail. We are not here concerned with discretion, but power of the Board. Appellee concedes that the Board did not abuse its discretion, if this is such a case as called for its exercise. Appellee urges that the Board exercised an undelegated power in permitting a use which is prohibited. The Board admittedly is granted some discretion to alleviate land use hardships, while at the other extreme

we know that the Board is powerless to go so far as to legislate. Somewhere between these opposites, the Board's delegated administrative powers cease and the municipality's legislative powers commence. That point of separation of powers means the difference between a valid and a void order.

■ Discretion to vary is not power to legislate. While the language which grants discretion cannot be expressed in decimal points, we do have some guides that indicate the areas which the Board of Adjustment may not transgress. In the absence of a clear delegation of powers, a Board's efforts to change the nature of permitted land uses have been held void. Under ordinances expressly prohibiting certain uses, as in this case, courts have on many occasions held void a Board's attempt to grant a variance permitting such use. Lee v. Board of Adjustment, 226 N.C. 107, 37 S. E.2d 128, 168 A.L.R. 1. In the absence of action by the proper legislative body of the city, an ordinance permitting a foundry in a first manufacturing district could not be expanded to permit a foundry in a second manufacturing district, City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229; nor a filling station in a residence district, Harrington v. Board of Adjustment, Tex. Civ.App., 124 S.W.2d 401; Bray v. Beyer, 292 Ky. 162, 166 S.W.2d 290, 292. A free parking lot adjoining a theatre was not permitted in the adjacent first residential district, Texas Consolidated Theatres v. Pittillo, Tex.Civ.App., 204 S.W.2d 396, nor a retail store in a dwelling district, Luse v. City of Dallas, Tex.Civ.App., 131 S.W. 2d 1079, and where, unlike in the instant case, all professions were expressly forbidden in a certain district, appellant was denied the right to use his home as a dentist's office, Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, although the question of the Board's power to vary the ordinance was not raised in that case. Accord, City of Harlingen v. Feener, Tex.Civ.App., 153 S.W.2d 671. Walton v. Tracy Loan & Trust Company, by the Supreme Court of Utah, 97 Utah 249, 92 P.2d 724, 727, states the reasons that land may not be re-classified for uses by action

of the Board: "Any variance in use is to the extent of such land in effect a rezoning or the placing of such land in a different zone than that in which the Commission by ordinance had placed it for the purpose of promoting the health, safety, morals and general welfare of the community. Such interpretation would permit the Board, an administrative agent merely, to set aside and in effect annul an ordinance, a legislative act of the Commission, and to do all the Commission itself might do. It requires no citation of authority to establish that the Commission could not delegate to the Board or any other administrative officer its legislative powers or functions. The Board may make such rules and regulations as are reasonably necessary or expedient to enable it to carry out administratively its functions and duties, but not the duties and powers of the Commission. Its function is to carry out the will of the Commission and not to void or set aside that judgment or will."

This Court recently held in the case of Hall v. Board of Adjustment of City of McAllen, 239 S.W.2d 647, that the failure to appeal from a Board's decision within the time allowed by the ordinance was grounds for dismissal of the suit for certiorari to review the action of the Board in allowing a skating rink in an area not permitted by the ordinance. Neither the opinion nor the transcript of statement of facts in that case, which we have again examined, brought forward the city ordinance which would show the measure of the powers delegated to the Board by the City of McAllen. Whether the Board exceeded its delegated powers was not the point in that case. Driskell v. Board of Adjustment, Tex.Civ.App., 195 S.W.2d 594, unlike the problem in the instant case, involved an ordinance specifically authorizing the Board to grant a variance as regards the same kind of use there sought. The Board there possessed the power and also the ordinance was clear in its intended scope. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67, held that the Board possessed the power to extend uses that were non-conforming at the time the ordinance there in question was passed. That

ordinance also expressly granted such power to the Board, unlike in the instant case where, instead of a grant of powers, there is a prohibition of the exercise of such powers. This distinction is recognized in the Court of Civil Appeals opinion, Boehme Bakery v. City of San Angelo, 185 S.W.2d 601. The Supreme Court approved this distinction between delegated and undelegated powers. City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, 171, states: "the Board of Adjustments of the City of University Park, exercising the powers granted by the ordinances of said City, denied the application, * * *." That case is no authority for a problem where there is no grant of power to the Board. City of West University Place v. Ellis, Tex.Civ.App., 118 S.W.2d 907, affirmed 134 Tex. 222, 134 S.W.2d 1038, in no way concerned the delegation of powers. That case held that even the proper legislative body of the city could not arbitrarily classify a business lot as a single family dwelling.

■ Board of Adjustment v. Stovall, Tex.Civ.App., 218 S.W.2d 286, concerned an ordinance which gave more specific authority to the Board than is found in the San Antonio ordinance, but it was there held that the attempted variation was legislation rather than a variance even under the more definite delegation of powers. The power to vary conditions of zoning ordinances should be sparingly exercised. Weaver v. Ham, Tex., 232 S.W.2d 704, 708.

Section 70 of the San Antonio zoning ordinance infers that the City Commissioners expected to exercise the power of changing district boundaries. It provides: "Sec. 70. The City Commissioners may from time to time amend, supplement or change by ordinance the boundaries of the districts or the regulations herein established."

■ We conclude that the ordinance prohibits a beauty shop in the D-Apartment District, and that under the delegated powers granted the Board to make a variance in instances of hardship, it cannot reclassify land uses. That must come by way of an amendment by the City Commissioners who retained the power to legislate.

The judgment is affirmed.

## W. O. MURRAY, Chief Justice.

I do not concur in the above opinion. It will be kept in mind that this is not an appeal from an order of the Board of Adjustment but an independent proceeding to have its order declared void for want of jurisdiction.

Under the zoning law the Board did have jurisdiction to consider whether or not the operating of a one-chair beauty shop, such as appellant desired to operate, was a home occupation such as the office of a physician, surgeon, dentist, musician, or artist, and whether there was to be granted a variance or exception to this zoning ordinance.

The construction placed upon the language of the ordinance by the majority is a very strict one and, in effect, holds that the doctrine of ejusdem generis should be applied, and therefore the only offices that can be operated in a D-Apartment District are those named in the ordinance. It occurs to me that the language of the ordinance, in general terms, having granted the right to conduct home occupations in D-Apartment districts, the language following, naming specifically five of these home industries, should not be given such strict construction as to exclude such home occupations as dress-making, a lawyer's office, an engineer's office, etc. Just why would the City authorize a doctor, a dentist, a surgeon, a musician or an artist to maintain an office in his home in such a zone and at the same time intend that under no circumstances could a dress-maker, a lawyer, or an engineer maintain an office in his home? I cannot believe that such was the intention. In construing an ordinance the legislative intent is the thing to be determined.

It further occurs to me that in construing the particular language here used in the ordinance an application of the doctrine of ejusdem generis will defeat rather than uphold the legislative intent. The doctrine of "ejusdem generis" and "expressio unius est exclusio alterius" are not rules of sub-

stantive law, but are only rules of construction, and are not to be applied where the legislative intent is plain and unambiguous. City of Lexington v. Edgerton, 289 Ky. 815, 159 S.W.2d 1015, 151 A.L.R. 1207; City of Caruthersville v. Faris, 237 Mo.App. 605, 146 S.W.2d 80.

For the reasons above stated, I respectfully enter my dissent.